UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                                                 CIVIL ACTION

**KENNETH CHARLES SAVAGE**                            NO. 07-3067
**SHARON M. SAVAGE**

**DEBTORS**                                                               SECTION "T"

### ORDER AND REASONS

The Court, after considering the appeal from the Unites States Bankruptcy Court for the Eastern District of Louisiana, the record, the brief of the appellee, and the applicable law, hereby **AFFIRMS** the judgment of the United States Bankruptcy Court.

**Standard of Review**

In reviewing a decision of the Bankruptcy Court, the District Court applies a "clearly erroneous" standard of review to findings of facts, and a *de novo* standard of review to questions of law. See 28 U.S.C. § 158 (c); Bankruptcy Rule 8013; and *In re T-H New Orleans Ltd. Partnership*, 116 F.3d 790 (5th Cir. 1997). In addition, when reviewing a Bankruptcy Court's determination regarding a disclosure statement, the District Court applies an "abuse of

discretion" standard of review.  *In re Texas Extrustion Corp.*, 844 F.2d 1142 (5th Cir. 1988).

**Background**

  Kenneth and Sharon Savage ("Savages") filed a voluntary petition under Chapter 7 of the Bankruptcy Code on March 13, 2006.  Shortly after their filing, Port Louis Owners Association ("PLOA") filed an adversary proceeding, claiming unliquidated damages for fraud and embezzlement.  The PLOA alleged that the amounts owed were excepted from discharge under 11 U.S.C. §523.  The court found that the allegations related specifically to Sections 523 (a)(2)(A) and (a)(4).

  The Savages own a home in a development community known as Port Louis.  The community is managed by the PLOA.  The PLOA enforces building and use restrictions in addition to maintaining common areas.

  On January 29, 2004 an electrical fire broke out of in the common wall between the Savages condominium unit.  The PLOA had acquired an insurance policy with Scottsdale Insurance Company ("Scottsdale") in order to insure their property against fire damage.

  After the fire, David Burke ("Burke"), the PLOA President, and a Scottsdale adjuster, met with the Savages to go over the damages.  At this meeting, Savage was informed specifically of what was and was not covered by the policy.  The policy only covered damages sustained by the structure itself.  Savage argued, to no avail, that the policy covered all damages. Therefore, the Savages could receive no compensation for the loss of use of their property, even though the combination of fire damage and damage caused by water from fire hoses made the condo

uninhabitable.

The Savages were allowed to manage the reconstruction of their unit and the neighboring unit owned by David Wilbur ("Wilbur"), as well as the insurance proceeds from the claims filed with Scottsdale. They were given the authority to execute contracts with third-party contractors, usually a responsibility of the PLOA. Additionally, they were given authority over a special checking account called the PLOA Fire Restoration Account ("Fire Account"). This account consisted of funds from the insurance proceeds and those separately deposited by the PLOA. The Savages were also given, by Board resolution, the authority to negotiate the insurance claims of the PLOA against Scottsdale and resulting from the fire.

Initially, a check from Scottsdale in the amount of $86, 252.25 was deposited into the Fire Account. Although the low bid for the reconstruction was $117,000.00, the Savages contracted with Marino Construction ("Marino") and accepted its bid of $209,760.00, because Marino could begin the construction immediately. In spite of the fact that this amount was in excess of that agreed to by Scottsdale, the Savages signed the contract.

After determining that mold remediation was necessary, Scottsdale requested a bid from Rugbusters, Inc. d/b/a SERVPRO of Slidell ("Servpro") to take care of the problems present in the two units. The amount of the bid was $33,326.19, which was forwarded by check to the Savages for the purpose of paying Sevrpo for the work to be performed. They then deposited this amount into the Fire Account.

Scottsdale made additional periodic deposits into the Fire Account totaling around $23,659.51. The PLOA deposited $4,421.52 into the Fire Account as the amounts owed under

the policy deductible. The amount of payments received from insurance and the PLOA total $176,546.16. Payments made to Marino total $116,252.50. However, additional amounts expended from the Fire Account can be categorized as follows:

| | |
|---|---|
| Attorney's Fees-Keller | $ 4,475.00 |
| Living Expenses-Savage | 21,250.00 |
| Living Expenses-Wilbur | 3,900.00 |
| Interior Restoration Expenses | 25,491.39 |
| Service Charges and Chargebacks | 3,413.02 |
| Storage | 1,750.00 |

These additional expenditures amount to $60,279.41.

The PLOA objected only to the use of funds expended by the Savages for living expenses, attorney's fees, those made payable to cash, and in payments of checks to Wilbur which were signed by the Savages. The PLOA claimed that these uses amounted to false pretenses, false representations, actual fraud and theft.

The Bankruptcy Court found that the Savages owed a $56,866.39, the total additional expenditures less the service charges and chargebacks, nondischargeable debt under Section 523(a)(4) for embezzling proceeds entrusted to them. The Court further held that the PLOA did not meet its burden of proof under section 523(a)(2)(A). Because the Court based its findings of nondischargeability on embezzlement only, it did not award attorney's fees. However, the Court did award federal legal interest from the date of the judicial demand as requested in the complaint. The Court further held that the Savages lacked the standing to assert their

counterclaim and denied this claim against the PLOA.

**Law and Argument**

In a bankruptcy appeal, findings of fact are not set aside unless they are found to be clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.  Bankruptcy Rule 8013.   In this case, the issue for the court to consider is whether the Bankruptcy Court erred in concluding that the debt owed by the Savages to the PLOA was nondischargeable under Section 523(a)(4) as a result of a finding of embezzlement.

11 U.S.C.A. §523(a)(4) states that a discharge in bankruptcy does not discharge an individual debtor from any debt incurred as a result of embezzlement.  For the purposes of this section, "embezzlement" has been defined to mean "the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *See Miller v. J.D. Abrams, Inc*. (*In re Miller*), 156 F.3d 598, 602 (5th Cir. 1998).  In order to meet the definition of "embezzlement", there must be proof of the debtor's fraudulent intent in taking the property.  *See id*. at 602-603.  A creditor must prove that he entrusted property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud.  *See id*. at 603, *citing Brady v. McAllister* (*In re Brady*), 101 F.3d 1165, 1173 (6th Cir. 1996).  An embezzlement claim requires a showing of fraud in fact, which can be proven by circumstantial evidence.  Fraud in fact involves either moral turpitude or an intentional wrong.

The Savages claim that the plaintiffs are not entitled to a determination of

nondischargeability because there is no showing that the Savages owed any duty in the application of the insurance proceeds.  Alternatively, they argue that even if they did owe a duty in the application of the proceeds, they did not improperly apply any of the funds.

It is clear from the facts of the case that the PLOA entrusted property, the insurance proceeds, to the Savages.  They were given the authority to control the Fire Account in order to use the funds deposited by Scottsdale, the PLOA's insurance provider, to reconstruct their condo. The funds were essentially owned by the PLOA, the holder of the policy, who then gave them to the Savages.  Furthermore, the board resolution which gave the Savages control over the Fire Account established a fiduciary relationship and thus provides support for the assertion that the Savages had been entrusted with the funds.

The funds entrusted to the Savages were also not used for the purposes for which they were appropriated.  The PLOA specifically gave them control over those funds to reconstruct their condo.  After the meeting with Burke and the insurance adjuster, there could be little doubt in Savage's mind as to exactly what the insurance proceeds would be covering.  The funds were given specifically to repair the structure of the unit.  At no time was there any indication that the funds could be used for any other purpose.  Additionally, the fact that it was clearly stated that the insurance proceeds would only cover the structure indicated that the interior of the condo was not to be covered.  This further indicates that there is no possible way for the Savages to justify the expenditure of these funds for their personal needs.

The funds appropriated were clearly neither personal funds nor intended for personal use. Quite to the contrary, the funds were intended to rebuild the structure and exterior of the units

damaged in the electrical fire. It was not even possible for the Savages to pay for Marino to complete its contract to repair the units, the total amount of funds provided to the Savages amounted to $133,237.95 and the Marino contract called for payment of $209,790.00. Furthermore, the funds to be paid to Servpro, $33,326.19, were designated specifically for the payment of that contract. Regardless of their claims that Servpro did not perform its contract, it appears that the funds intended to be used for that purpose were in fact used for personal purposes. This clearly articulated intention to not use the funds for the intended purpose coupled with the fact that the Savages unquestionably used the funds for personal use indicates an intent to defraud the PLOA in order to cover their own personal losses. The existence of such an intentional wrong provides for a finding of fraud in fact.

Therefore, the findings of the Bankruptcy Court are not clearly erroneous. It seems evident that the plaintiffs have proven all that is necessary to show that the Savages embezzled funds from the PLOA. This finding in turn makes the debt incurred, $56,866.19, nondischargeable in bankruptcy and thus owed to the plaintiffs.

**IT IS ORDERED** that the judgment of the United States Bankruptcy Court for the Eastern District of Louisiana be **AFFIRMED**.

New Orleans, Louisiana this 29th day of June, 2007.

                                                         **G. THOMAS PORTEOUS, JR.**
                                                         **UNITED STATES DISTRICT JUDGE**